REVERE COPPER AND BRASS, INCORPORATED, Appellant, *v.* GEHN-RICH OVEN COMPANY, INCORPORATED, Respondent.

First Department, May 13, 1938.

·*M. M. Leichter* of counsel [*John L. Ketcham* with him on the brief; *Weissberger & Leichter*, attorneys], for the appellant.

*Abraham Daniels* of counsel [*David Auerbach* with him on the brief], for the respondent.

COHN, J. This action was brought by plaintiff to recover the agreed price of copper allegedly sold by it to defendant.

It appears from the evidence that defendant ordered from plaintiff certain fabricated copper which the former intended to use in

manufacturing articles requested by its customer, William H. Jackson Company (hereinafter referred to as Jackson Company). According to the testimony of defendant's president, plaintiff refused to accept the order because it was not satisfied with defendant's credit rating but agreed to, and did, sell to Jackson Company, with whom plaintiff had had previous dealings. Plaintiff's witnesses, on the other hand, stated that the sale was actually made by plaintiff to defendant after Jackson Company agreed to " guarantee " the account.

The documentary proof in the case destroys defendant's contention and supports plaintiff's version that defendant and not Jackson Company had purchased and agreed in the first instance to pay for the merchandise.

The copper and the bills therefor were delivered by plaintiff to defendant. Before the material had been shipped by plaintiff, and on October 26, 1932, the defendant wrote the following letter to Jackson Company:

" WM. H. JACKSON COMPANY
\* \* \*

" With further reference to your order 36767, the Revere Copper & Brass Incorporated, with *whom we are placing our order for the material, question our credit standing;* this because of the recent reorganization of our Company and our inability to submit a new statement before November 10.

" We understand Mr. H. A. Schleider of the Revere Company spoke to you on the subject and that *you will deduct the amount of their material bills from remittances you make to us* against this order, remitting direct to them for the amount of their bills.

" *This procedure is satisfactory to us* and you may take this letter as *your authority* to handle the matter in this way.

" Copy of this letter is being sent to Revere Copper & Brass Incorporated.

" Very truly yours,
" THE GEHNRICH CORPORATION,
" A. V. MADAY."

(Italics ours.)

The only reasonable inference to be drawn from this communication is that defendant had purchased the copper from plaintiff and that Jackson Company was to deduct from the total sums due from it to defendant, the amount due plaintiff for the metal and to remit direct to plaintiff therefor. If the metal had actually been purchased by the Jackson Company, it would hardly have been necessary for defendant to authorize Jackson Company to

pay for it. Another fact inconsistent with the defendant's claim is that in billing its own customer for the articles manufactured by it, defendant included the price of the copper. Surely defendant could not have expected Jackson Company to pay for its own copper. There was here no agreement or understanding that defendant should be relieved of its obligation to pay for the goods if the Jackson Company did not.

The defendant stresses the fact that the plaintiff also forwarded bills to the Jackson Company for the copper. This, however, was adequately explained by the testimony which showed that such bills were requested by the Jackson Company merely to have some record in its files to justify the payment to plaintiff.

Defendant also contended that plaintiff filed a claim for the cost of the merchandise with the trustee in bankruptcy of the Jackson Company and points to this as proof of a direct sale to the bankrupt. The claim was filed on April 14, 1933. An examination of it establishes that it was for " *goods sold and delivered* through its New York division *to the Gehnrich Corp.* * * * which the bankrupt promised and agreed to pay." This can scarcely be construed as an admission by plaintiff that the copper was sold to someone other than defendant. It is to be noted that in the same bankruptcy proceeding, as early as December 27, 1932, defendant filed a proof of claim in which it included the cost of all the copper material in question.

We think that upon the whole case plaintiff fully established its right to recover. Defendant, of course, is entitled to have credited against the judgment sums, if any, paid by the trustee to plaintiff in the Jackson Company bankruptcy since the trial of this action.

The judgment should be reversed, with costs, and judgment directed for the plaintiff for the sum of $2,326.37, with interest from November 2, 1932, and costs.

MARTIN, P. J., UNTERMYER and CALLAHAN, JJ., concur; DORE, J., dissents and votes for affirmance.

DORE, J. (dissenting). Plaintiff sold the copper not on defendant's credit but on the credit of William H. Jackson Company. It is conclusively established by the oral as well as the documentary evidence that plaintiff in the transaction in question expressly refused to extend credit to defendant but did extend it to the Jackson Company.

The copper was shipped November 2, 1932. The terms as stated on plaintiff's exhibit were " Net 30 days or less 1% if paid within 10 days from date." Plaintiff, however, did not send state-

ments to defendant or make any formal demand for payment from defendant until May, 1933, long after the Jackson Company on whose credit plaintiff relied had become bankrupt. In the Jackson bankruptcy proceedings plaintiff filed a vertified proof of claim including the price of the copper sold in this transaction in the sum of $3,323.36.

On November 3, 1932, plaintiff made out invoices for the copper which, so far as relevant, read as follows:

" REVERE COPPER & BRASS INCORPORATED
" Rome Division
" Rome, N. Y.

" 11 /3 /32

" Sold to
" WM. H. JACKSON COMPANY
" 335 Carroll St.
" Brooklyn, N. Y.
" Shipped to
" THE GEHNRICH CORP.
" Long Island City."

On November 21, 1932, plaintiff wrote the Jackson Company as follows:

" As requested in yours of the 16th instant, we are enclosing herewith bills made out to your company, covering the materials shipped to the Gehnrich Corporation.

" Trusting that you will find same in order, we remain

" Yours very truly,
" REVERE COPPER AND BRASS INCORPORATED
" A. M. BROWN
" *Credit Manager — Rome Division.*"

Plaintiff's claim filed with the trustee in bankruptcy of the Jackson Company was found to be a valid debt owed by the Jackson Company to plaintiff as it is undisputed that plaintiff was allowed, and received and accepted, a thirty per cent dividend from the said trustee. It is claimed that subsequently an additional twenty per cent dividend thereon was paid to and received by plaintiff.

Defendant before it was aware that it could not procure the copper on its own credit had contracted in writing to furnish the Jackson Company fabricated copper on a building improvement. When defendant found plaintiff refused to sell the copper to defendant because it was not satisfied with defendant's credit rating, defendant wrote the letter quoted in the majority opinion dated October 26, 1932. Clearly it was because of the prior contractual

arrangements which defendant found it could not carry out because it could not get credit that defendant had to write the Jackson Company the said quoted letter giving authority to handle the matter in the manner indicated; that is, to have the Jackson Company deduct the amount due the plaintiff for the material and remit direct to plaintiff the amount of its bills. This is not the basis of an inference that the copper was sold to defendant; but it should be the basis of a contrary inference as a sale is made to the one to whom credit is extended on the sale and to whom the seller looks for payment.

The sole question on this appeal (which plaintiff is prosecuting over four years after the trial and over three years since it served its record on appeal) is whether the judgment of dismissal is fairly substantiated by the evidence. In so far as the oral testimony is contradictory, and it is, the trial court who saw and heard the witnesses and examined the documentary proof accepted defendant's version. It cannot be said that its verdict is not supported by the evidence; it is amply supported and should not be disturbed.

The judgment should be affirmed, with costs.

Judgment reversed, with costs, and judgment directed for the plaintiff for the sum of $2,326.37, with interest from November 2, 1932, and costs. Settle order on notice.